**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

ANGELA M. R.,

Plaintiff,

v.

No. 5:25-CV-334 (LEK/PJE)

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

---

| **APPEARANCES:** | **OF COUNSEL:** |
| --- | --- |
| Justin Goldstein Law, PLLC<br>38 Pond Valley Circle<br>Penfield, New York 14526<br>Attorneys for plaintiff | JUSTIN M. GOLDSTEIN, ESQ. |
| Social Security Administration<br>Office of the General Counsel<br>6401 Security Boulevard<br>Baltimore, Maryland 21235<br>Attorneys for defendant | KRISTINA D. COHN, ESQ. |

**PAUL J. EVANGELISTA**
**U.S. MAGISTRATE JUDGE**

## REPORT-RECOMMENDATION AND ORDER[1]

Angela M. R.[2] ("plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3) seeking review of a decision by the Commissioner of the Social Security Administration ("the Commissioner") denying her applications for disability

---

[1] This matter was referred to the undersigned for Report-Recommendation and in accordance with General Order 18 and N.D.N.Y. L.R. 72.3(e).

[2] In accordance with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in 2018 to better protect personal and medical information of non-governmental parties, this Report-Recommendation and Order will identify plaintiff's last name by initial only.

insurance benefits ("DIB") and supplemental security income ("SSI"). *See* Dkt. No. 1. Plaintiff moved for the Commissioner's decision to be vacated and remanded for further proceedings. *See* Dkt. No. 9. The Commissioner moved for the decision to be affirmed. *See* Dkt. No. 11.[3] Plaintiff filed a reply. *See* Dkt. No. 12. For the following reasons, it is recommended that plaintiff's cross-motion be granted, the Commissioner's cross-motion be denied, and the Commissioner's decision be vacated and remanded for further development.

## I. **Background**

On July 26, 2022, plaintiff filed Title II and Title XVIII applications for DIB, and an application for SSI, alleging a disability onset date of July 15, 2020. *See* T. at 198-205[4] (*See* Dkt. No. 8-5).[5] On January 24, 2023, the Social Security Administration ("SSA") denied plaintiff's claims. *See id*. at 115-19 (*See* Dkt. No. 8-4). On January 30, 2023, plaintiff sought reconsideration, which the SSA denied on July 11, 2023. *See id.* at 120-27 (*See* Dkt. No. 8-4). Plaintiff appealed and requested a hearing. *See id*. at 128-29 (*See* Dkt. No. 8-4). On May 8, 2024, a hearing was held before Administrative Law Judge ("ALJ") Kenneth Theurer. *See id*. at 37-58 (*See* Dkt. No. 8-2). On May 22, 2024, the ALJ issued an unfavorable decision. *See id*. at 7-31 (*See* Dkt. No. 8-2). On February 10, 2025, the Appeals Council affirmed the ALJ's determination and the decision became

[3] This matter has been treated in accordance with General Order 18. Under that General Order, once issue has been joined, an action such as this is considered procedurally as if cross-motions for judgement on the pleadings have been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

[4] "T." followed by a number refers to the pages of the administrative transcript. *See* Dkt. No. 8. Citations to the administrative transcript refer to the pagination in the bottom, right-hand corner of the page. Citations to the parties' briefs refers to the pagination generated by the Court's electronic filing and case management program located at the header of each page.

[5] Due to the voluminous nature and many parts of the administrative transcript, in addition to the record citation, the undersigned will include the docket cite for factual citations.

final. *See id*. at 1-6 (*See* Dkt. No. 8-2). Plaintiff commenced this action on March 14, 2025. *See* Dkt. No. 1.

## II. **Legal Standards**

### A. **Standard of Review**

"In reviewing a final decision of the Commissioner, a district court may not determine de novo whether an individual is disabled." *Joseph J. B. v. Comm'r of Soc. Sec.*, No. 1:23-CV-652 (BKS/CFH), 2024 WL 4217371, at *1 (N.D.N.Y. Aug. 29, 2024), *report and recommendation adopted,* No. 1:23-CV-652 (BKS/CFH), 2024 WL 4216048 (N.D.N.Y. Sept. 17, 2024) (citing 42 U.S.C. §§ 405(g), 1388(c)(3)); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). "Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence." *Id.* (citing *Johnson v. Bowen*, 817 F.2d 983, 985-86 (2d Cir. 1987)); *see also Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). "Substantial evidence is 'more than a mere scintilla,' meaning that in the record one can find 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (quoting *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (per curiam) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971))). "The substantial evidence standard is a very deferential standard of review . . . [This] means once an ALJ finds facts, we can reject [them] only if a reasonable factfinder would have to conclude otherwise." *Id*. (quoting *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam)) (internal quotation marks omitted). "Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion is arguably

supported by substantial evidence." *Id.* (citing *Martone v. Apfel*, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing *Johnson*, 817 F.2d at 986)). "However, if the correct legal standards were applied and the ALJ's finding is supported by substantial evidence, such finding must be sustained 'even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's].'" *Id*. (quoting *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992)).

B. **Determination of Disability**

"Every individual who is under a disability shall be entitled to a disability . . . benefit . . . ." 42 U.S.C. § 423(a)(1)(E). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" *Id.* § 423(d)(1)(A). "A medically-determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based upon age, education, and work experience." *Joseph J. B.*, 2024 WL 4217371, at *2 (citing 42 U.S.C. § 423(d)(2)(A)). "Such an impairment must be supported by 'medically acceptable clinical and laboratory diagnostic techniques.'" *Id.* (citing 42 U.S.C. § 423(d)(3)). "Additionally, the severity of the impairment is 'based on objective medical facts, diagnoses[,] or medical opinions inferable from [the] facts, subjective complaints of pain or disability, and educational background, age, and work experience.'" *Id.* (quoting *Ventura v. Barnhart*, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing *Mongeur v. Heckler*, 722 F.2d 1033, 1037 (2d Cir. 1983))).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. § 404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.
>
> If he [or she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his [or her] physical or mental ability to do basic work activities.
>
> If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.
>
> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.
>
> Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform . . .

*Berry*, 675 F.2d at 467 (spacing added). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Joseph J. B.*, 2024 WL 4217371, at *2 (quoting *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003)). "The plaintiff bears the initial burden of proof to establish each of the first four steps." *Id*. (citing *DeChirico v. Callahan*, 134 F.3d 1177, 1180 (2d Cir. 1998) (citing *Berry*, 675 F.2d at 467)). "If the inquiry progresses to the fifth step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment somewhere." *Id.* (citing *DeChirico*, 134 F.3d at 1180 (citing *Berry*, 675 F.2d at 467)).

## III. **The ALJ's Decision**

The ALJ applied the five-step disability sequential evaluation. Before reaching step one, the ALJ determined that plaintiff "meets the insured status requirements of the Social Security Act through December 31, 2024." T. at 13 (*See* Dkt. No. 8-2). At step one, the ALJ determined that plaintiff "has not engaged in substantial gainful activity since July 15, 2020, the alleged onset date." *Id*. (*See* Dkt. No. 8-2). At step two, the ALJ determined, "[s]ince the alleged onset date of disability, July 15, 2020, [plaintiff] has had the following severe impairments: asthma, mild osteoarthritis bilateral knees, carpal tunnel syndrome, right trigger finger, and morbid obesity." *Id*. (*See* Dkt. No. 8-2). At step three, the ALJ concluded, "[s]ince July 15, 2020, [plaintiff] has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id*. at 16 (*See* Dkt. No. 8-2).

Before reaching step four, the ALJ concluded:

> since July 15, 2020, [plaintiff] has the residual functional capacity[6] to perform less than the full range of light work[7] as defined in 20 CFR 404.1567(b) and 416.967(b). [Plaintiff] can occasionally lift and carry twenty pounds, frequently lift and carry ten pounds, sit for up to six hours, and stand or walk for approximately four hours in eight-hour day with normal breaks. [Plaintiff] can occasionally climb ramps or stairs but never climb ladders, ropes, or scaffolds. [Plaintiff] can perform occasional balancing, stooping, kneeling, crouching, and crawling. [Plaintiff] can perform no more than frequent handling or fingering with the right upper extremity. [Plaintiff]

---

[6] Hereafter "RFC."

[7] 20 C.F.R. §§ 404.1567(b) and 416.967(b) provide that the physical exertion requirements for "light work"

> involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b); 416.967(b).

> should avoid exposure to concentrations of smoke, dust, and respiratory irritants.

T. at 17 (*See* Dkt. No. 8-2). At step four, the ALJ determined that "[s]ince July 15, 2020, [plaintiff] has been unable to perform any past relevant work." *Id*. at 22 (*See* Dkt. No. 8-2).

Before reaching step five, the ALJ found:

> Prior to October 4, 2023, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled" whether or not [plaintiff] has transferable job skills. Beginning on October 4, 2023, [plaintiff] has not been able to transfer job skills to other occupations.

*Id*. (*See* Dkt. No. 8-2). At step five, the ALJ determined:

> Prior to October 4, 2023, the date [plaintiff's] age category changed, considering [plaintiff's] age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that [plaintiff] could have performed . . .
>
> Beginning on October 4, 2023, the date [plaintiff's] age category changed, considering [plaintiff's] age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that [plaintiff] could perform.

*Id*. at 22-23 (*See* Dkt. No. 8-2).

Ultimately, the ALJ concluded that plaintiff "was not disabled prior to October 4, 2023, but became disabled on that date and has continued to be disabled through the date of this decision. Her disability is expected to last twelve months past the onset date." *Id*. at 24 (*See* Dkt. No. 8-2).

## IV. **Discussion**

### A. **Arguments**

Plaintiff argues that the ALJ's decision is not supported by substantial evidence. More specifically, plaintiff argues, the ALJ's RFC determination that she could perform

light work with limitations is not supported by the evidence of record. *See* Dkt. No. 9 at 10-16. Plaintiff asserts that the ALJ did not explain how he determined that she was "capable of less than full range of light work with the ability to stand or walk 'for approximately four hours in an eight hour day with normal breaks.'" *Id*. at 12 (quoting T. at 17 (*See* Dkt. No. 8-2)). Plaintiff contends that none of the medical opinions discussed in the ALJ's decision support this conclusion. *See id*. at 12-13. Plaintiff argues,

> [t]he full range of light work generally requires the ability to stand and walk for six hours in an eight hour day . . . If someone is limited to less than six hours in an eight hour day, often they will be limited to sedentary work—which requires only two hours of standing and walking.

*Id.* at 13 (citing SSR 83-10).

Plaintiff also argues that the ALJ erred by relying on her ability to do activities "like attending to personal care, cooking, cleaning, and shopping" because engaging in basic activities necessary to one's welfare is markedly different than working full time." Dkt. No. 9 at 12-13 (quoting *Claudio-Montanez v. Kijakazi*, No. 21-2027, 2022 WL 17819123, at *6 (2d Cir. Dec. 20, 2022)). Finally, plaintiff argues that the ALJ improperly rejected Dr. Baker's medical opinions which were generated prior to the relevant period and address her right hand and arm conditions. *See id*. at 13-16.

The Commissioner argues that the ALJ's decision is supported by substantial evidence because "Courts within the Second Circuit have affirmed ALJ's RFC findings for light work with exceptions for walking or standing less than six hours in an eight-hour workday." Dkt. No. 11 at 8 (first citing *Karen W. v. Comm'r of Soc. Sec.*, No. 20-CV-0267 (CJS), 2021 WL 4316557, at *5; then citing *O'Connell v. Kijakazi*, No. 18-CV-10546 (AEK), 2021 WL 4480464, at *10 (S.D.N.Y. Sept. 30, 2021); then citing 20 C.F.R. §§ 404.1567(b), 416.967(b)). The Commissioner contends that the ALJ's RFC determination does not

need "to mirror a medical opinion of record" and "a medical opinion is not required to support an RFC finding." *Id*. at 8-9. Conversely, the Commissioner argues that the ALJ's RFC determination is supported by objective medical evidence and the medical opinions of record and that the ALJ reasonably relied upon plaintiff's activities of daily living ("ADL"). *See id*. at 10-12. The Commissioner asserts that "the ALJ did not err in finding Dr. Saeed's opinion persuasive and then including greater limitations in his RFC finding." *Id*. at 10-11 (first citing *Lesanti v. Comm'r of Soc. Sec.*, 436 F. Supp. 3d 639, 649 (W.D.N.Y. 2020), then citing *Wakefield v. Comm'r of Soc. Sec.*, No. 19-CV-0655 (MWP), 2020 WL 3100852, at *5 (W.D.N.Y. June 11, 2020); then citing *Ramsey v. Comm'r of Soc. Sec.*, 830 F. App'x 37, 39 (2d Cir. 2020) (summary order)). The Commissioner also asserts that the ALJ "reasonably relied on Plaintiff's [ADL] to support his RFC finding." *Id*. Further, the Commissioner argues that the ALJ correctly rejected Dr. Baker's opinions because Dr. Baker's medical opinions are from August 2018 and August 2019 and significantly predate the onset of plaintiff's disability in July 2020. *Id*. at 12-14.

B. **RFC**

"RFC describes what a claimant is capable of doing despite his or her impairments, considering all relevant evidence, which consists of physical limitations, symptoms, and other limitations beyond the symptoms." *Joseph J. B.*, 2024 WL 4217371, at *8 (quoting *Malcolm M. v. Comm'r of Soc. Sec.*, No. 1:17-CV-986 (CFH), 2019 WL 187725, at *4 (N.D.N.Y. Jan. 14, 2019) (first citing *Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999), then citing 20 C.F.R. §§ 404.1545, 416.945))). "[A]n RFC finding is administrative in nature, not medical, and its determination is within the province of the ALJ." *Id*. (quoting *Curry v. Comm'r of Soc. Sec.*, 855 F. App'x 46, 48 n.3 (2d Cir. 2021) (summary order)

(citing 20 C.F.R. § 404.1527(d)(2))). "In assessing RFC, the ALJ's findings must specify the functions plaintiff is capable of performing; conclusory statements regarding plaintiff's capabilities are not sufficient." *Id*. (quoting *Martone*, 70 F. Supp. 2d at 150) (citations omitted).

"In making the RFC determination, the ALJ must consider all relevant medical and other evidence, including any statements about what the claimant can still do provided by any medical sources." *Joseph J. B.*, 2024 WL 4217371, at *8 (citing 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c)). "[T]he ALJ's conclusion [need] not perfectly correspond with any of the opinions of medical sources cited in his [or her] decision, [and] he [or she i]s entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Id.* (quoting *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order)). "The Court 'defer[s] to the Commissioner's resolution of conflicting evidence[.]'" *Id*. (quoting *Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (summary order)) (internal citation omitted). "Therefore, even if a plaintiff disagrees with the ALJ's assessment of opinion evidence and can point to evidence in the record to support his or her position, whether there is substantial evidence supporting the [plaintiff's] view is not the question; rather, [the Court] must decide whether substantial evidence supports the ALJ's decision." *Id*. (quoting *Elizabeth P. v. Comm'r of Soc. Sec.*, No. 3:20-CV-891 (CFH), 2022 WL 507367, at *4 (N.D.N.Y. Feb. 18, 2022)) (internal quotation marks and citation omitted). "The ALJ must not ignore evidence or cherry pick only the evidence from medical sources that support a particular conclusion and ignore the contrary evidence, but [t]he Court will not reweigh the evidence that was before the

ALJ." *Id*. (quoting *April B. v. Saul*, No. 8:18-CV-682 (DJS), 2019 WL 4736243, at *6 (N.D.N.Y. Sept. 27, 2019)) (internal quotation marks and citations omitted).

1. **Standing or Walking Limitation**

In reaching the plaintiff's RFC determination, the ALJ concluded that plaintiff had the ability to "stand or walk for approximately four hours in eight-hour day with normal breaks." T. at 17 (*See* Dkt. No. 8-2). Plaintiff argues that this conclusion is not supported by the ALJ's RFC analysis or the medical opinions upon which the ALJ relied. *See* Dkt. No. 9 at 12-13. The undersigned agrees with plaintiff.

In reaching this determination, the ALJ discussed plaintiff's subjective reports as well as her medical records and examination reports from July 2021 to February 2024. *See* T. at 18-21 (*See* Dkt. No. 8-2). The ALJ also relied on state agency medical consultant Dr. Saeed's medical opinion and rejected state consultative examiner Dr. Lorensen's medical opinion. *See id*. 21 (*See* Dkt. No. 8-2). Yet, the ALJ's analysis does not explain how he determined that plaintiff's ability to stand or walk was limited to "approximately four hours in eight-hour day with normal breaks." T. at 17 (*See* Dkt. No. 8-2).

The ALJ's discussion of plaintiff's medical records and examination reports notes plaintiff's right knee condition and related symptoms, but the ALJ's recitation of these records does not include any limitation(s) placed on plaintiff's ability to stand or walk. *See id*. at 18-20 (*See* Dkt. No. 8-2); *see also Kinslow v. Colvin*, No. 5:12-CV-1541 (GLS/ESH), 2014 WL 788793, at *5 (N.D.N.Y. Feb. 25, 2014) (citing *Hazlewood v. Commissioner of Soc. Sec.,* No. 6:12-CV-798 (DNH/ATB), 2013 WL 4039419, at *5 (N.D.N.Y. Aug. 6, 2013) (additional citation omitted)) ("[W]hen medical findings merely diagnose impairments

without relating diagnoses to specific residual physical, mental and other work-related capacities, an administrative law judge's determination of residual functional capacity without a medical advisor's assessment of those capacities is not supported by substantial evidence."); *Ramos v. Colvin*, No. 13-CV-6503P (MWP), 2015 WL 925965, at *9 (W.D.N.Y. Mar. 4, 2015) (quotation omitted) (holding "[w]here the medical findings in the record merely diagnose [the] claimant's exertional impairments and do not relate those diagnoses to specific residual functional capabilities, as a general rule, the Commissioner may not make the connection himself.").

Further, Dr. Saeed opined that plaintiff had the ability to stand or walk for "[a]bout 6 hours in an 8 hour workday." T. at 96, 103 (*See* Dkt. No. 8-3). Dr. Lorensen noted that plaintiff complained of "arthritis and pain in the right knee. The right knee pain is exacerbated by standing, walking, bending her right knee. It is accompanied by swelling. She received an injection in the right knee for treatment." *Id*. at 383 (*See* Dkt. No. 8-7). During the examination, Dr. Lorensen determined that plaintiff had an abnormal gait, walked with a "slight limp," was "unable to walk on [her] heels and toes without difficulty," and was "[u]nable to squat." *Id*. at 384. *See* Dkt. No. 8-7). Dr. Lorensen opined that plaintiff had "[m]ild to moderate limitations for standing and ambulating." *Id*. at 386 (*See* Dkt. No. 8-7). Dr. Lorensen did not translate plaintiff's "[m]ild to moderate limitations for standing and ambulating" to a limitation based on standing or walking for a period of time. *See id*. (*See* Dkt. No. 8-7).

It is unclear how the ALJ concluded that plaintiff's ability to stand or walk was limited to four hours of an eight-hour workday because the evidence upon which the ALJ relies does not support such a conclusion. It appears that the ALJ substituted his own

judgment for that of a competent medical opinion. *See Balaguer Perez v. Berryhill*, No. 17-CV-3045 (JMA), 2019 WL 1324949, at *5 (E.D.N.Y. Mar. 25, 2019) (quoting *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998)) ("[A]lthough the RFC determination is an issue reserved for the ALJ, an ALJ 'cannot arbitrarily substitute [her] own judgment for [a] competent medical opinion.'") (internal citation omitted)); *Hilsdorf v. Comm'r of Soc. Sec.*, 724 F. Supp. 2d 330, 347 (E.D.N.Y. 2010) (citation omitted) ("Because an RFC determination is a medical determination, an ALJ who makes an RFC determination in the absence of supporting expert medical opinion has improperly substituted his own opinion for that of a physician, and has committed legal error."). "Stated another way, when no medical source opinion supports an administrative law judge's residual functional capacity finding, that finding lacks substantial evidentiary support." *Kinslow*, 2014 WL 788793, at *5 (citation omitted); *John K. v. Comm'r of Soc. Sec.*, No. 23-CV-648 (JLS), 2025 WL 1248727, at *4, n.5 (W.D.N.Y. Apr. 29, 2025) (quoting *Jordan v. Berryhill*, No. 1:17-CV-509 (JJM), 2018 WL 5993366, at *3 (W.D.N.Y. Nov. 15, 2018)) ("[T]he RFC appears to be based upon [the ALJ's] lay opinion of plaintiff's limitations, which is not permitted and requires remand.").

Therefore, the undersigned concludes that the ALJ's RFC determination that plaintiff was able to "stand or walk for approximately four hours in eight-hour day with normal breaks" is not supported by substantial evidence. T. at 17 (*See* Dkt. No. 8-2); *see also Kinslow*, 2014 WL 788793, at *5; *Balaguer Perez*, 2019 WL 1324949, at *5 (quoting *Balsamo*, 142 F.3d at 81).

2. **ADL**

Plaintiff also correctly argues that the ALJ improperly relied on her ADL to reach his RFC determination. *See* Dkt. No. 9 at 12-13. The ALJ concluded that plaintiff's "statements about the intensity, persistence, and limiting effects of her symptoms . . . are inconsistent with her activity level. Although the claimant alleges debilitating impairments, the record shows that she retains a range of functioning." T. at 18 (*See* Dkt. No. 8-2). The ALJ addressed plaintiff's ADL and explained that plaintiff

> is able to live alone and, to [s]ome extent, is able to attend to her personal care needs, cook, clean, shop, drive, use public transportation, go out alone, socialize, go to Bingo, and go to restaurants. She is able to follow spoken instructions. [Plaintiff] is able to pay bills, count change, handle a savings account, and use a checkbook/money order. Her ability to handle money has not changed since her conditions began. [Plaintiff] enjoys watching television, listening to music, and reading (Exhibits 5E; 4F, page 3; and 5F, page 2). She is able to advocate for herself in order to resolve landlord/tenant disputes (Exhibit 1F, page 8). Thus, it seems that [plaintiff] is limited, but not disabled, by the symptoms of her impairments. [Plaintiff's] activity level is consistent with the ability to perform a range [o]f light work such as is contemplated by the [RFC].

*Id*. (*See* Dkt. No. 8-2).

Yet, the ALJ did not explain how plaintiff's ADL support or translate to an ability to perform light work or maintain regular employment. "[W]hile an ALJ may properly consider these activities when assessing the intensity and persistence of symptoms . . . the ALJ here appeared to place disproportionate weight on [P]laintiff's activities of daily living, none of which equate to the ability to perform substantial gainful activity." *Alexandria S. v. Comm'r of Soc. Sec.*, No. 6:22-CV-20 (MAD/DJS), 2023 WL 2863323, at *4 (N.D.N.Y. Feb. 3, 2023), *report and recommendation adopted,* No. 6:22-CV-20 (MAD/DJS), 2023 WL 2583212 (N.D.N.Y. Mar. 21, 2023) (first citing *Tenesha G. v. Comm'r of Soc. Sec.*, No. 5:20-CV-1070 (DNH), 2022 WL 35998, at *7 (N.D.N.Y. Jan. 4, 2022); then quoting *David F. v. Comm'r of Soc. Sec. Admin.*, No. 3:21-CV-315 (SALM),

2021 WL 5937670, at *9 (D. Conn. Dec. 16, 2021) (quoting *Berg v. Colvin*, No. 3:14-CV-1042 (SALM), 2016 WL 53823, at *8 (D. Conn. Jan. 5, 2016))) (internal citation and quotation marks omitted); *see also Munoz v. Comm'r of Soc. Sec.*, No. 20-CV-2496 (KAM), 2021 WL 4264814, at *6 (E.D.N.Y. Sept. 20, 2021) (quoting *Bigler v. Comm'r of Soc. Sec.*, No. 19-CV-3568 (AMD), 2020 WL 5819901, at *5 (E.D.N.Y. Sept. 29, 2020) (quoting *Vasquez v. Barnhart*, No. 02-CV-6751, 2004 WL 725322, at *11 (E.D.N.Y. Mar. 2, 2004))) ("[A] finding that a claimant is capable of undertaking basic activities of daily life cannot stand in for a determination of whether that person is capable of maintaining employment, at least where there is no evidence that the claimant engaged in any of these activities for sustained periods comparable to those required to hold a sedentary job.") (internal quotation marks omitted).

The Second Circuit has "stated on numerous occasions that 'a claimant need not be an invalid to be found disabled' under the Social Security Act." *Alexandria S.*, 2023 WL 2863323, at *4 (quoting *Balsamo*, 142 F.3d at 81 (quoting *Williams v. Bowen*, 859 F.2d 255, 260 (2d Cir. 1988))); *Moss v. Colvin*, No. 1:13-CV-731 (GHW/MHD), 2014 WL 4631884, at *33 (S.D.N.Y. Sept. 16, 2014) ("It is well-settled in the Second Circuit that the capacity to care for oneself does not, in itself, contradict a claim of disability as people should not be penalized for enduring the pain of their disability in order to care for themselves.") (internal citation and quotation marks omitted). "There are critical differences between activities of daily living (which one can do at his own pace when he is able) and keeping a full time job." *Id*. (quoting *David F.*, 2021 WL 5937670, at *9 (quoting *Moss*, 2014 WL 4631884, at *33)). "[A]n ALJ should take into account whether any evidence of daily activities shows that the claimant engage[d] in any of these activities

for sustained periods comparable to those required to hold . . . a job." *Id*. (quoting *Kelly W. v. Kijakazi*, No. 3:20-CV-948 (JCH), 2021 WL 4237190, at *10 (D. Conn. Sept. 17, 2021) (quoting *Balsamo*, 142 F.3d at 81))).

Therefore, the undersigned concludes that the ALJ did not properly consider plaintiff's ADL.

### 3. **Dr. Baker**

In August 2018 and August 2019, Dr. Bruce Baker examined plaintiff. *See* T. at 971, 1039-47 (*See* Dkt. No. 8-10). In August 2018, Dr. Baker opined that plaintiff's "[r]eturn to work at this time would require restrictions which would include . . . limited repetitive use of the right hand and right upper extremity, no work with her right arm at or above shoulder level and a weight lifting limit of 15 pounds." *Id*. at 1039. In August 2019, Dr. Baker opined that plaintiff had the same restrictions on her right hand and arm. *See id*. at 971.

The ALJ implicitly rejected Dr. Baker's opinions, explaining:

> The record also contains several opinions, which predate the period at issue (Exhibit 14F). Even though some of the limitations contained therein may be partially consistent with the overall record, they are less persuasive because they are based on assessments, which were made prior to the period at issue herein and do not represent [plaintiff's] maximum level of functioning during the period before me.

T. at 21 (*See* Dkt. No. 8-2). Plaintiff argues that the ALJ erred in rejecting Dr. Baker's opinions because she continued to suffer from the same right arm condition, related symptoms, and limitations in the relevant period that Dr. Baker examined in 2018 and 2019. *See* Dkt. No. 9 at 15-16. The undersigned agrees.

The Commissioner correctly points out that Dr. Baker issued his opinions in August 2018 and August 2019, approximately one and two years prior to plaintiff's alleged onset

date. *See* Dkt. No. 11 at 12; T. at 971, 1039-47 (*See* Dkt. No. 8-10). However, the undersigned disagrees with the Commissioner's argument that this fact alone renders Dr. Baker's opinions irrelevant to the analysis of plaintiff's right arm condition and limitations, such that the ALJ did not have to consider the opinion.[8] *See id*.

As stated above, Dr. Baker opined on plaintiff's right arm condition and related limitations. *See* T. at 971, 1039-47 (*See* Dkt. No. 8-10). Dr. Saeed noted plaintiff's right hand and arm condition and opined that plaintiff could occasionally lift and/or carry twenty pounds and frequently lift and/or carry ten pounds. T. at 96, 103 (*See* Dkt. No. 8-3). Diagnostic testing performed by Dr. Lorensen revealed "[f]orward elevation and abduction of the right shoulder [to] 90 degrees." *Id*. at 385 (*See* Dkt. No. 8-7). Dr. Lorensen diagnosed plaintiff with "[r]ight shoulder pain, presumably of unknown etiology" and opined that plaintiff had "moderate limitations . . . for reaching with the right arm." *Id*. at 386-87 (*See* Dkt. No. 8-7). It is unclear how the ALJ rejected Dr. Baker's opinions but relied upon Dr. Saeed and Dr. Lorensen's opinions when all three doctors evaluated what

---

[8] The undersigned notes that the Commissioner does not argue that Dr. Baker's opinion is stale. "[A]n ALJ should not rely on 'stale' [medical source] opinions . . . ." *Steve P. v. Comm'r of Soc. Sec.*, No. 19-CV-492 (MWP), 2021 WL 307566, at *5 (W.D.N.Y. Jan. 29, 2021) (quoting *Robinson v. Berryhill*, No. 1:17-CV-362 (LJV/JJM), 2018 WL 4442267, at *4 (W.D.N.Y. Sept. 17, 2018)). "In general, medical source opinions that are conclusory, stale, and based on an incomplete medical record may not be substantial evidence to support an ALJ finding." *Michael R. D. v. Comm'r of Soc. Sec.*, No. 1:21-CV-215 (JLS), 2023 WL 3869022, at *4 (W.D.N.Y. June 7, 2023) (quoting *Camille v. Colvin*, 104 F. Supp. 3d 329, 343 (W.D.N.Y. 2015), *aff'd*, 652 F. App'x 25 (2d Cir. 2016) (summary order)) (internal quotation marks omitted). "Medical opinions are rendered 'stale' by a 'new significant diagnosis' or 'significant deterioration' in the plaintiff's condition." *Angele J. W. v. Comm'r of Soc. Sec.,* No. 6:23-CV-824 (BKS/CFH), 2024 WL 4204301, at *5 (N.D.N.Y. July 24, 2024), *report and recommendation adopted,* No. 6:23-CV-824 (BKS/CFH), 2024 WL 4204017 (N.D.N.Y. Sept. 16, 2024) (quoting *Benitez v. Comm'r of Soc. Sec.*, No. 23-CV-1327 (ARL), 2024 WL 1332612, at *8 (E.D.N.Y. Mar. 28, 2024) (quoting *Andrea G. v. Comm'r of Soc. Sec.*, No. 5:20-CV-1253 (TWD), 2022 WL 204400, at *7 (N.D.N.Y. Jan. 24, 2022))); *see Carney v. Berryhill*, No. 16-CV-269 (FPG), 2017 WL 2021529, at *6 (W.D.N.Y. May 12, 2017) ("[A] medical opinion may be stale if it does not account for the [plaintiff's] deteriorating condition."). The passage of time does not render a medical source opinion "stale" as long as "the subsequent evidence does not undermine [the opinion evidence]." *Steve P.*, 2021 WL 307566, at *5 (quoting *Hernandez v. Colvin*, No. 15-CV-6764 (CJS), 2017 WL 2224197, at *9 (W.D.N.Y. May 22, 2017) (citing *Camille v. Colvin*, 652 F. App'x 25, 28 n.4 (2d Cir. 2016) (summary order) (additional citation omitted))).

appears to be the same right arm condition and limitations, particularly, when the ALJ found that plaintiff's limitations that predated the relevant period were "partially consistent with the overall record." T. at 21 (*See* Dkt. No. 8-2); *Compare* T. at 971, 1039-47, *with* 96, 103, *and* 385-87 (*See* Dkt. Nos. 8-2, 8-3, 8-7).

The SSA is required to develop a "complete medical history for at least the 12 months preceding the month in which" a plaintiff files an application for benefits "unless there is a reason to believe that development of an earlier period is necessary or unless [the plaintiff states] that [their] disability began less than 12 months before [they] filed [their] application." 20 C.F.R. § 404.1512(b)(1). "For applications for [DIB], as here, the relevant period is the alleged disability onset date to the date last insured." *Crespo v. Comm'r of Soc. Sec.*, No. 3:18-CV-0435 (JAM), 2019 WL 4686763, at *3 (D. Conn. Sept. 25, 2019) (citing 20 C.F.R. §§ 404.1512(b)(1), 404.1512(b)(1)(ii)). Generally, "[c]onsideration of evidence outside the relevant periods of disability . . . is not afforded significant or convincing weight when reviewing whether an ALJ's conclusions were supported by substantial evidence." *Anderson v. Comm'r of Soc. Sec. Admin.*, No. 22-CV-1509 (JMW), 2025 WL 660330, at *12 (E.D.N.Y. Feb. 28, 2025) (citing *Mauro v. Berryhill*, 270 F. Supp. 3d 754, 762 (S.D.N.Y. 2017)).

However, ALJs are permitted to and "regularly review" evidence created prior to the filing date, as it is "often relevant" to the claims period. *Thomas v. Comm'r of Soc. Sec.*, No. 1:18-CV-839 (JJM), 2020 WL 548394, at *3 (W.D.N.Y. Feb. 4, 2020) (quoting *Hussain v. Comm'r of Soc. Sec.*, No. 13 CIV. 3691 (AJN-GWG), 2014 WL 4230585, at *12 (S.D.N.Y. Aug. 27, 2014), *report and recommendation adopted*, No. 13-CV-3691 (AJN-GWG), 2014 WL 5089583 (S.D.N.Y. Sept. 25, 2014)) ("ALJs regularly review prior

evidence for the purpose of considering an open application, as such evidence is often relevant to the claimant's medical condition for the period in which benefits are claimed."). "In fact, there are many instances where an ALJ must consider such prior evidence to properly assess the severity of the claimant's medical condition during the open application period." *Id*. "[E]vidence from before or after the relevant time period often provides necessary context for a disability claim and, if so, an ALJ cannot simply ignore it." *Angele J. W. v. Comm'r of Soc. Sec.*, No. 6:23-CV-00824 (BKS/CFH), 2024 WL 4204301, at *5 (N.D.N.Y. July 24, 2024), *report and recommendation adopted,* No. 6:23-CV-824 (BKS/CFH), 2024 WL 4204017 (N.D.N.Y. Sept. 16, 2024) (quoting *Cheri Lee H. v. Comm'r of Soc. Sec.*, No. 5:19-CV-10 (DNH), 2020 WL 109007, at *5 (N.D.N.Y. Jan. 9, 2020) ("For instance, if plaintiff's evidence suggesting that she suffered frequent migraines (at least before the relevant time period) stood uncontested in the record, it might well be inappropriate for the ALJ to ignore it or to reject it out of hand."); *Norman v. Astrue*, 912 F. Supp. 2d 33, 82 n.74 (S.D.N.Y. 2012) (citation omitted) ("[T]he mere absence of contemporaneous medical evidence of a disabling condition during the relevant time period does not necessarily preclude a finding of disability."); *Cf. Robert V. v. Kijakazi*, No. 3:21-CV-377 (MPS), 2022 WL 4536838, at *3 (D. Conn. Sept. 28, 2022) (concluding that the ALJ did not overlook evidence regarding plaintiff's neurologic and cardiac conditions when there was "no indication that the evidence from outside of the relevant period reflects Plaintiff's condition during the relevant period.").

Accordingly, the undersigned concludes that although Dr. Baker's opinions were proffered prior to plaintiff's alleged onset date, the right arm condition and limitations he reviewed appear to be the same as or similar to the right arm condition and limitations the

other medical sources reviewed during the relevant period; therefore, Dr. Baker's opinion is relevant to the ALJ's RFC analysis and should have been addressed. *See Angele J. W.*, 2024 WL 4204301, at *5; *Thomas*, 2020 WL 548394, at *3; *Garcia Medina v. Comm'r of Soc. Sec.*, No. 17-CV-6793-JWF, 2019 WL 1230081, at *2 (W.D.N.Y. Mar. 15, 2019) (citation omitted) ("While the ALJ may have had sound arguments to discredit some of these opinions – either because they were from non-acceptable medical sources, were not particularly helpful, or came before the alleged onset date – they were relevant at the very least and she should have at least addressed them.").

In sum, the undersigned concludes that (1) the ALJ substituted his own medical opinion to determine plaintiff's RFC limitations; (2) the ALJ improperly relied on plaintiff's ADL, and (3) the ALJ should have considered Dr. Baker's medical opinions. *See Joseph J. B.*, 2024 WL 4217371, at *8 (citing 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c)); *Alexandria S.*, 2023 WL 2863323, at *4; *Angele J. W.*, 2024 WL 4204301, at *5; *Thomas*, 2020 WL 548394, at *3. It is recommended that, on remand, the ALJ reevaluate plaintiff's RFC, including Dr. Baker's opinion and plaintiff's ADL. *See* 20 C.F.R. §§ 416.920c(c)(1), 416.920c(c)(2); *Kathleen A.*, 2022 WL 673824, at *5; *Balaguer Perez*, 2019 WL 1324949, at *5; *John K.*, 2025 WL 1248727, at *4, n.5.; *Angele J. W.*, 2024 WL 4204301, at *5; *Lozito v. Comm'r of Soc. Sec. Admin.*, No. 21-CV-5969 (JMW), 2025 WL 473978, at *15 (E.D.N.Y. Feb. 12, 2025), *amended in part,* No. 21-CV-5969 (JMW), 2025 WL 832501 (E.D.N.Y. Mar. 16, 2025) ("[T]he Court finds the ALJ's RFC determination resulted from a flawed evaluation of medical opinion evidence such that remand is warranted.") (internal quotation marks omitted); *Kathleen M. v. Comm'r of Soc. Sec.*, No. 8:20-CV-1040 (TWD), 2022 WL 92467, at *9 (N.D.N.Y. Jan. 10, 2022) (citing 20 C.F.R. § 404.1545(a)(3)) ("A

flawed evaluation of medical opinion evidence also impacts the ALJ's assessment of a claimant's residual functional capacity.").

Accordingly, the undersigned recommends that plaintiff's cross-motion be granted and the Commissioner's cross-motion be denied.

## V. **Conclusion**

**WHEREFORE**, for the reasons set forth herein, it is hereby:

**RECOMMENDED**, that plaintiff's cross-motion (Dkt. No. 9) be **GRANTED**; and it is further

**RECOMMENDED**, that the Commissioner's cross-motion (Dkt. No. 11) be **DENIED**, and the Commissioner's decision be reversed and remanded for further proceedings consistent with this Report-Recommendation and Order; and it is

**ORDERED**, that the Clerk serve a copy of this Report-Recommendation and Order on all parties in accordance with Local Rules.

**IT IS SO ORDERED**.

Pursuant to U.S.C. §636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. §636(b)(1); Fed. R. Civ P. 6(a), 6(e), 72.

Dated: August 24, 2026
Albany, New York

Paul J. Evangelista
U.S. Magistrate Judge